**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

MAINLINE INFORMATION
SYSTEMS, INC.,

      Plaintiff,

v.                           CONSOLIDATED CASE
                                 NO.  4:12cv247-RH/CAS

TAD C. NORTHCOTT et al.,

      Defendants.

_____/

## PRELIMINARY INJUNCTION

The plaintiff Mainline Information Systems, Inc., has moved for a

preliminary injunction prohibiting five former employees, their new employer—

Sirius Computer Solutions, Inc.—and another Sirius employee from soliciting

customers and using confidential information in violation of agreements the former

employees entered with Mainline.  This order confirms and in some respects adds

to the ruling announced on the record granting a preliminary injunction.

I

The plaintiff Mainline and the defendant Sirius are competitors who market

sophisticated computer products and services.  The individual defendants include

five former Mainline employees: Tad C. Northcott, Brian T. Hamill, David Schafer, Erin F. Rinner, and Lisa Seider. Each left Mainline and immediately went to work for Sirius. Mr. Schafer's last day at Mainline was September 22, 2011. Mr. Hamill's last day was October 21, 2011. Mr. Northcott's last day was October 31, 2011. Ms. Rinner's and Ms. Seider's last day was December 31, 2011. The other individual defendant is Sirius's senior vice president for sales, Jimmy D. Fordham.

Each former Mainline employee had an employment agreement that included six provisions of significance here. For convenience, this order quotes and cites Mr. Northcott's agreement. The others were analogous.

First, the agreement required the employee to devote the employee's "entire business time and energy to the furtherance of the business of [Mainline]." ECF No. 74-1 at ¶ 2.

Second, the agreement prohibited the employee from disclosing Mainline's trade secrets, for as long as they remain trade secrets under applicable law, "[e]xcept in the performance of services for [Mainline]." *Id*. at ¶¶ 6.A. & 6.B.

Third, the agreement prohibited the employee from disclosing Mainline's "Confidential Information" during the employment and for two years after the employment ended. *Id.* at ¶ 6.B. The agreement defined "Confidential Information" to include "[i]nformation regarding [Mainline's] customers which

Employee acquired as a result of his employment with[Mainline], including, but not limited to, customer contracts, work performed for customers, customer contacts, customer requirements and needs, data used by [Mainline] to formulate customer bids, customer financial information, and other information regarding the customer's business." *Id*. at ¶ 6.D.

Fourth, the agreement prohibited the employee, during the employment and for one year after the employment ended, from directly or indirectly soliciting any Mainline customer or prospect with whom the employee had contact, or any representative of such a customer or prospect, "with a view to selling or providing" a deliverable or service competitive with Mainline. *Id*. at ¶ 7. The parties have agreed that the provision applied only to contacts within the last year of the employee's time at Mainline.

Fifth, the agreement prohibited the employee, during the employment and for one year after the employment ended, from soliciting for employment at a competing business anyone who worked for Mainline during the employee's last year there. *Id*. at ¶ 8.

And sixth, the agreement provided that if the employee violated "any covenant or agreement in Paragraphs 6, 7, or 8"—these included the terms described in the four paragraphs of this order preceding this one—"that covenant or agreement" would "automatically be extended for a period of one (1) year from

the date on which the Employee permanently ceases violation or for a period of one (1) year from the date of entry by a court of competent jurisdiction a final order or judgment enforcing such covenant, whichever period is later." *Id.* at ¶ 9.C.  Despite the reference to "whichever period is later," this order assumes that an injunction could not properly extend the period beyond the applicable one- or two-year period (from the date of the employee's termination) or additional one-year period (from the date violations permanently ceased).

## II

As a prerequisite to a preliminary injunction, a plaintiff must establish a substantial likelihood of success on the merits, that it will suffer irreparable injury if the injunction does not issue, that the threatened injury outweighs whatever damage the proposed injunction may cause a defendant, and that the injunction will not be adverse to the public interest.  *See*, *e.g.*, *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).  I find that Mainline has met each of these criteria.

Even a permanent injunction must be carefully matched to the violation that led to issuance of the injunction.  *See, e.g.*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32-33 (2008).  Mainline has established that it is likely to prevail on its claim that the defendants have committed specific violations.  This order

enters a preliminary injunction that will prevent irreparable harm from further violations of the same kind while the litigation goes forward. Mainline has sought a preliminary injunction with more extensive provisions but has failed to establish a likelihood of success on claims broad enough to support the more extensive provisions or has failed to establish that the more extensive provisions are necessary to prevent irreparable harm while the litigation goes forward.

III

The record establishes that each former-employee defendant violated ¶ 6.D. of the defendant's employment agreement with Mainline by using or disclosing Mainline's confidential information to help Sirius compete with Mainline. *See, e.g.*, ECF No. 61-3 at 79 (Northcott & Schafer); ECF No. 96-5 at 220-221 (Northcott & Schafer); ECF No. 1-12 (Hamill) (Case No. 4:12-cv-452); ECF No. 1-6 (Rinner) (Case No. 4:12-cv-529); ECF Nos. 1-5, 1-11 (Seider) (Case No. 4:12-cv-529). Unless enjoined, the violations are likely to continue. Further improper use or disclosure of the confidential information is likely to cause irreparable harm to Mainline. The balance of harms and public interest favor issuance of a preliminary injunction.

The record establishes that Mr. Northcott repeatedly violated ¶ 7 of his employment agreement by directly or indirectly soliciting Mainline customers or prospects with whom he had contact during his last year at Mainline. *See, e.g.,*

ECF No. 61-4 at 25, 27 (direct); ECF Nos. 61-3 at 79, 81, 87, 109-110; 61-4 at 18 (indirect). Sometimes he used others to "front" the solicitations while he worked in the background. *See, e.g.*, ECF Nos. 61-2 at 24; 61-5 at 47. At least once, Mr. Northcott "massag[ed]" his "internal definition" of his prohibited contacts, allowing him to contact past customers he initially recognized as prohibited. *See* ECF No. 96-5 at 257-58. And Mr. Northcott has testified that when the one-year anniversary of his departure from Mainline passed, he no longer believed he was subject to any limit on his solicitation of customers or prospects with whom he had contact at Mainline, and thus began soliciting those customers without restrictions. ECF No. 96-5 at 231.

The one-year anniversary plainly did not end Mr. Northcott's duty not to solicit those customers, because Mr. Northcott had breached the nonsolicitation clause during the year. Under ¶ 9.C. of the employment agreement, the nonsolicitation duty continues for one year after the last violation. A reasonable inference from Mr. Northcott's own testimony is that he began unrestricted solicitations of the prohibited customers on the one-year anniversary and has continued unabated. Unless enjoined, Mr. Northcott is likely to continue the solicitations. Further improper solicitations are likely to cause irreparable harm to Mainline. The balance of harms and public interest favor issuance of a preliminary injunction.

The record establishes that the former-employee defendants and Mr. Fordham, on behalf of Sirius, cooperated with one another in a substantial number of violations of the employment agreements. *See, e.g.*, ECF Nos. 61-2 at 24 (Northcott & Fordham); 61-3 at 79 (Northcott & Schafer); 61-4 at 14-15 (Northcott & Schafer); 61-4 at 32 (Hamill & Northcott); 61-5 at 47 (Northcott & Schafer); 96-9 at 73, 89 (Northcott & Fordham); 96-9 at 118 (Seider, Rinner, Hamill, & Northcott); 96-9 at 125-127 (Northcott & Hamill). There was a joint effort among all the defendants to benefit from the improper use and disclosure of Mainline's confidential information and to assist in the improper solicitation of customers. *See, e.g.*, ECF Nos. 61-2 at 24 (Northcott & Fordham); 61-3 at 79 (Northcott & Schafer); 61-4 at 29-30 (Northcott & Schafer); ECF No. 1-12 (Hamill) (Case No. 4:12-cv-452); ECF Nos. 1-6 (Rinner), 1-11(Seider) (Case No. 4:12-cv-529). Unless enjoined, the cooperation in the violations is likely to continue. Further violations, and cooperation in them, are likely to cause irreparable harm to Mainline. The balance of harms and public interest favor issuance of a preliminary injunction.

IV

Based on the findings summarized in this order and on the entire record, the employment agreements, and the applicable law,

IT IS ORDERED:

1.     Mainline's preliminary-injunction motions, ECF Nos. 61 & 75, are GRANTED IN PART and DENIED IN PART.  A preliminary injunction is entered on the terms set out below.

2.      Tad C. Northcott must not directly or indirectly solicit, or assist any other person in soliciting, any of these entities:

     A. BCT;

     B. DOD-DHSS-JMLFDC;

     C. DOD-Medical;

     D. Haemonetics;

     E. U.S. Department of the Navy—Navy Engineering Logistics Office;

     F. U.S. Department of the Navy—Naval Academy; and

     G. U.S. Department of the Navy—JPMIS.

3.     Mr. Northcott must not directly or indirectly solicit, or assist any other person in soliciting, any unit with which he dealt during his last year at Mainline from any of these entities:

     A. DOD-Defense Information Service Agency;

     B. DOD-Pentagon;

     C. DOD-MHSCS-DMLSS;

     D. Lockheed Martin;

     E. Northrop Grumman;

F. U.S. Department of the Navy—Naval Undersea Warfare Center

Keyport; and

G. U.S. Department of the Navy—SPAWAR.

A "unit" is an office within an entity that recommends or finally approves the selection of a product or service of the kind marketed by Mainline or Sirius. A unit may be a purchasing office, an information-technology office, an end-user office, or an office that combines more than one of these functions.

4.     Mr. Northcott must not directly or indirectly solicit or assist in soliciting any person acting on behalf of any of the entities or units that he is prohibited from contacting under paragraphs 2 or 3.

5.     Brian T. Hamill must not assist Mr. Northcott or work together with Mr. Northcott in any way in connection with any direct or indirect solicitation of any entity listed in paragraph 2 or any unit listed in paragraph 3 that the enjoined defendant knows Mr. Northcott dealt with during his last year at Mainline. Mr. Hamill must not assist Mr. Northcott or work together with Mr. Northcott in any way in directly or indirectly soliciting any person acting on behalf of any of the same entities or units.

6.     David Schafer must not assist Mr. Northcott or work together with Mr. Northcott in any way in connection with any direct or indirect solicitation of any entity listed in paragraph 2 or any unit listed in paragraph 3 that Mr. Schafer

knows Mr. Northcott dealt with during his last year at Mainline. Mr. Schafer must not assist Mr. Northcott or work together with Mr. Northcott in any way in directly or indirectly soliciting any person acting on behalf of any of the same entities or units.

7.      Erin F. Rinner must not assist Mr. Northcott or work together with Mr. Northcott in any way in connection with any direct or indirect solicitation of any entity listed in paragraph 2 or any unit listed in paragraph 3 that Ms. Rinner knows Mr. Northcott dealt with during his last year at Mainline. Ms. Rinner must not assist Mr. Northcott or work together with Mr. Northcott in any way in directly or indirectly soliciting any person acting on behalf of any of the same entities or units.

8.      Lisa Seider must not assist Mr. Northcott or work together with Mr. Northcott in any way in connection with any direct or indirect solicitation of any entity listed in paragraph 2 or any unit listed in paragraph 3 that Ms. Seider knows Mr. Northcott dealt with during his last year at Mainline. Ms. Seider must not assist Mr. Northcott or work together with Mr. Northcott in any way in directly or indirectly soliciting any person acting on behalf of any of the same entities or units.

9.      Jimmy D. Fordham must not assist Mr. Northcott or work together with Mr. Northcott in any way in connection with any direct or indirect solicitation of any entity listed in paragraph 2 or any unit listed in paragraph 3 that Mr.

Fordham knows Mr. Northcott dealt with during his last year at Mainline. Mr. Fordham must not assist Mr. Northcott or work together with Mr. Northcott in any way in directly or indirectly soliciting any person acting on behalf of any of the same entities or units.

10. Sirius Computer Solutions, Inc. must not assist Mr. Northcott or work together with Mr. Northcott in any way in connection with any direct or indirect solicitation of any entity listed in paragraph 2 or any unit listed in paragraph 3 that Sirius knows Mr. Northcott dealt with during his last year at Mainline. Mr. Fordham must not assist Mr. Northcott or work together with Mr. Northcott in any way in directly or indirectly soliciting any person acting on behalf of any of the same entities or units.

11. Mr. Northcott must not use or disclose information regarding Mainline Information Systems, Inc.'s customers that Mr. Northcott, Mr. Hamill, Mr. Schafer, Ms. Rinner, or Ms. Seider acquired as a result of employment with Mainline, including, but not limited to, customer contracts, work performed for customers, customer contacts, customer requirements and needs, data used by Mainline to formulate customer bids, customer financial information, and other information regarding the customer's business.

12. Mr. Hamill must not use or disclose information regarding Mainline Information Systems, Inc.'s customers that Mr. Northcott, Mr. Hamill, Mr.

Schafer, Ms. Rinner, or Ms. Seider acquired as a result of employment with Mainline, including, but not limited to, customer contracts, work performed for customers, customer contacts, customer requirements and needs, data used by Mainline to formulate customer bids, customer financial information, and other information regarding the customer's business.

13.     Mr. Schafer must not use or disclose information regarding Mainline Information Systems, Inc.'s customers that Mr. Northcott, Mr. Hamill, Mr. Schafer, Ms. Rinner, or Ms. Seider acquired as a result of employment with Mainline, including, but not limited to, customer contracts, work performed for customers, customer contacts, customer requirements and needs, data used by Mainline to formulate customer bids, customer financial information, and other information regarding the customer's business.

14.     Ms. Rinner must not use or disclose information regarding Mainline Information Systems, Inc.'s customers that Mr. Northcott, Mr. Hamill, Mr. Schafer, Ms. Rinner, or Ms. Seider acquired as a result of employment with Mainline, including, but not limited to, customer contracts, work performed for customers, customer contacts, customer requirements and needs, data used by Mainline to formulate customer bids, customer financial information, and other information regarding the customer's business.

15.     Ms. Seider must not use or disclose information regarding Mainline

Information Systems, Inc.'s customers that Mr. Northcott, Mr. Hamill, Mr.

Schafer, Ms. Rinner, or Ms. Seider acquired as a result of employment with

Mainline, including, but not limited to, customer contracts, work performed for

customers, customer contacts, customer requirements and needs, data used by

Mainline to formulate customer bids, customer financial information, and other

information regarding the customer's business.

16.     Mr. Fordham must not use or disclose information regarding Mainline

Information Systems, Inc.'s customers that Mr. Northcott, Mr. Hamill, Mr.

Schafer, Ms. Rinner, or Ms. Seider acquired as a result of employment with

Mainline, including, but not limited to, customer contracts, work performed for

customers, customer contacts, customer requirements and needs, data used by

Mainline to formulate customer bids, customer financial information, and other

information regarding the customer's business.

17.     Sirius must not use or disclose information regarding Mainline

Information Systems, Inc.'s customers that Mr. Northcott, Mr. Hamill, Mr.

Schafer, Ms. Rinner, or Ms. Seider acquired as a result of employment with

Mainline, including, but not limited to, customer contracts, work performed for

customers, customer contacts, customer requirements and needs, data used by

Mainline to formulate customer bids, customer financial information, and other information regarding the customer's business.

18. This injunction does not limit the ability of Sirius or any individual defendant other than Mr. Northcott to solicit the entities or units listed in paragraphs 2 and 3, so long as the defendant does not assist Mr. Northcott or work together with Mr. Northcott in any way in connection with the solicitation and does not use Mainline's confidential information in violation of this injunction.

19. This injunction does not limit any defendant's ability to disclose information to a defense attorney in connection with the defense of this lawsuit.

20. This injunction will take effect when Mainline provides security in the amount of $50,000 to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The security may be provided through a deposit with the clerk of the court, or an injunction bond issued by an appropriate entity unrelated to Mainline, or—unless a defendant objects—an undertaking filed by Mainline that includes a statement substantially in this form: "Mainline agrees to pay up to $50,000 in costs or damages sustained by parties found to have been wrongfully enjoined or restrained by the preliminary injunction entered in this action."

21. This injunction will remain in effect until otherwise ordered or until entry of a final judgment.

22.     This injunction binds the defendants and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

SO ORDERED on July 19, 2013.

s/Robert L. Hinkle
United States District Judge